Good morning. May it please the Court, my name is Christina Abraham and I represent the Plaintiff Appellate, Dored Shiba, in the matter before the Court today. Would the Court benefit from a brief summary of the facts in this case, or does the Court have any questions about the facts that I can answer before I get into the argument? You can use your time any way you wish. I actually have a question with regard to the complaint and your theory in the complaint. So in paragraph 6 you say that DHS has employed the tactic of stalling on plaintiff's background checks. And I think my question is, to answer the question of whether or not DHS was stalling, does that require an inquiry into, for example, whether the delay was caused by security concerns because of the prior accusations that were brought against your client? And if so, then it seems that you, that we would not be able to, or the District Court wouldn't be able to inquire into that area. And so I'm trying to figure out what your theory is. Is it that, you know, DHS really has no security concerns and they're just stalling, in other words they're just not letting it proceed, they're doing nothing? Or is it that because of these concerns raised earlier or previously in the process, it's just taking a lot more time and because those original allegations were unfounded, you know, that's not a proper security clearance protocol? So my theory of the case, Your Honor, is that specifically DHS is stalling the background check process, not because it has legitimate security concerns, but because DHS is retaliating against my client, and that these are false and fabricated security concerns. Because otherwise they would let PSD do its job and conduct a security clearance investigation. What we have here is OIG, which has no function to run security clearances, doesn't have any role in the recruitment or investigation of personnel in that process of hiring personnel, intervening now on multiple occasions to not sway or influence PSD or help PSD reach any kind of determination, but specifically to obstruct them from making a determination, which when it holds on to those, when it stalls long enough, the employment offer gets rescinded. And that's happened to my client at least twice now. So I disagree that the court wouldn't have review in this case, because I think, and as I'll jump into it in my argument, Department of Navy v. Egan precludes court's review of the issuance of determinations, of revocations or denials of security clearances. It says nothing of a third-party entity blocking PSD from being able to make a determination on numerous occasions such that it stalls for so long that the employment offer gets rescinded, which I think is what happens. It depends on how broadly or narrowly to read the Egan principle in general, but specific to the context of this case, it does depend on your theory of the case, as Judge Lee is trying to... Not well, apparently, but I'm trying to articulate it. And I had the same difficulty trying to understand what the theory of your case is, and maybe I could tell you what I thought it was, and you can tell me if I'm right or wrong. My understanding is that this is basically a pretext argument. This is a disability discrimination claim under the Rehabilitation Act of the retaliation sort, species. You're arguing or alleging that your client was retaliated against because of his previous disability discrimination protected activity, as he was accusing the agency of disability discrimination. That requires an analysis of whether the agency's reason for revoking the job offer is pretextual for the real reason, which was disability discrimination. And to determine whether the reason is pretextual, we have to look at whether it was genuine. Sure, you would have to look at that. To some degree, what its basis was in order to determine whether the reason, which relates to the security clearance issue, whether that reason was genuine. In other words, the real reason as opposed to pretext for retaliation. In order to do that, to assess the genuineness, the sincerity of the reason that's offered, whether it was the real reason as opposed to a pretextual cover for actual disability discrimination, we have to look at the security clearance issue, and that's what's prohibited by EGAN. I would say that you don't have to look at the security clearance issue. All you have to do... Is that a fair description of what the nature of your claim is and how the EGAN issue fits? It's a fair description of what arose the claim. I believe that EGAN doesn't fit in this case because of what I had mentioned before, but I do think that you did have a good understanding of the factual basis for the theory here, why he believes that he's been retaliated against. But how do we evaluate the issue of pretext? Because you need to show that the reason the agency gave, which was the security clearance problem, was pretextual. It's not... And a guise, a cover for disability discrimination. It isn't disputed that the PSD was not able to make a determination, and to me that's irrelevant to the claim. PSD was not able to make a determination because another agency had a reinvestigation. This agency is not tasked with security clearance determinations. So that other agency, which I allege is DHS OIG, and at this stage that allegation should be taken as true, and inference is drawn in favor of my client, that retaliatory intent that's stalling his security clearance determination, in my reading of EGAN, is not precluded from judicial review. When you look at EGAN, when we read the Supreme Court's decision in EGAN, it was looking at, and it calls it, a very narrow question. And the question is, does the MSPB, and by extension to federal courts, have jurisdiction to review the issuance of the denial or the revocation of a security clearance? Was it jurisdiction or justiciability? Well, they don't talk about jurisdiction or justiciability. They're actually specifically looking at statutes that give the MSPB authority to review these cases, and essentially the Supreme Court determined in that case, in EGAN, that for two reasons. One, the denial of a security clearance is not an adverse employment action that MSPB would have purview to review, and number two, there are inconsistent review standards between when a person is supposed to get national security clearance, it has to be clearly consistent with national security, and when the MSPB reviews a decision, it reviews on the preponderance of the evidence. So the Supreme Court said these two standards are not consistent with one another, and for that reason we have to give deference to the experts who issue security clearances. In this case, the experts have not at all been able to issue a security clearance determination because of actions of DHS, a third party. Counsel, I guess, let me try again. I can imagine a case where in this similar situation, DHS internally has said, you know what, we've looked at all of this, we're prepared to send our results to PD, to the other agency, right? But we're not going to because we don't like this guy, okay? So that's kind of on one extreme, right? So we've already done the investigation, you know, we're ready to send this report forward, right? But we're not going to because we know we want to keep this guy from getting a job, okay? That's one extreme. The other scenario is DHS saying, well, you know, there are these other prior allegations that raise some concerns, we're going to look into it, and it might take a little bit longer because we're backed up, but we're just kind of going to look into it, and that's why your client doesn't get a job, okay? Is your claim the earlier example or the later example? It's the earlier example, if I hadn't stated it clearly enough. It's that we think that this third-party agency, DHS in this case, is purposefully stalling the completion of his background checks, is not allowing PSD to complete its background checks. I have about 50 seconds left, and I wanted to reserve some time for rebuttal. Can I answer any other questions before reserving the remainder of my time? That's fine. Thank you. Thank you. Ms. Flannery. May it please the Court. Counsel. Kate Flannery on behalf of the Department of Homeland Security. Sheba's employment retaliation complaint challenges his security clearance investigation and actions that were taken during that investigation. So Ms. Flannery, take my first example of the two, okay? Let's say, imagine a world where an agency has done the security clearance, okay? Yep. It's passed flying colors, okay? But the agency says, you know what, we're not going to release it because we don't want this guy getting the job, okay? And so in that hypothetical scenario, I'm not saying that's what happened here, but hypothetically speaking, then the applicant comes to court and says, you know what, this is a violation of the ADA because, you know, they're just not releasing the report, okay? Would we have jurisdiction over that case? No. Would that be justiciable? Even after the agency has done all of its work and if it's saying, let's imagine that the person is Asian American, the applicant, and the agency says, you know what, we have too many Asians. And so even though we have a green light on security, we're not going to release the report so he can't be hired. You're saying that we at the court, that that question, because we don't have to look at the security, about the security rationales or the reasoning or anything, we still would not be able to consider that case? Yes, Your Honor. In your hypothetical, I believe the answer is yes, correct. The court would not be able to review that decision. But for Mr. Sheba, he, that is a different case. So in your hypothetical, in theory, a plaintiff could suffer discrimination as part of the case. That would be justiciable. There would be no jurisdiction to review that. Even though that would not require us to look into the rationale for the security clearance or why it was given, we just take it, let's say the plaintiff says, you know what, I stipulate that I don't have to consider, the court doesn't have to consider the backgrounds or the rationale for the security clearance at all. I completely stipulate that. All I want the court to look at and all I want discovery on is whether or not the agency has purposely said they're not going to release it because I'm Asian American. You're saying that we don't have jurisdiction over that claim? Your Honor, I think this is a very extreme example and it would likely still require discovery into every element that the Personnel Security Division looks at when making that determination. And so I think it would still look into the factors that expert bodies consider when making national security predictive judgments. Why is that if it's based on discrimination? Because, Your Honor, you'd have to look at every factor, who they spoke to, what they considered, elements that they weigh when making these decisions. They would have to consider that. And so you can't strip a plaintiff's allegation of discrimination away from the national security judgment call that these expert bodies are making. Don't we do that in consular non-reviewability? Don't we say that we're not going to look at the decision on whether or not to issue a visa, but we can look to see whether there's a constitutional right that was violated? The court in Egan doesn't slice and dice this. The court in Egan says it treats it as a whole process. And this is what the dissents in Rattigan, both Rattigan 1 and Rattigan 2, say is that it's a holistic view of the entire process and you can't look at the front end or referrals or the back end. It's the entire process that is protected from judicial review. And, Judge Kohler, I'd like to speak to a matter that you asked of whether something is jurisdictional or not. Our position, the department's position, is that this is a jurisdictional issue. The whole premise of Egan was whether a court can review security determinations and the power to review, that's jurisdiction. And multiple appellate courts have also ruled the Fourth Circuit, the Ninth Circuit, the Eleventh Circuit, that this is jurisdictional. Is that consistent with the Supreme Court's current jurisdiction jurisprudence? Yes, I believe so. Well, there's no statute that says this is unreviewable. I believe it is still in line with the Supreme Court's precedent. But even if this court were to conclude that it is not a jurisdictional issue, you could do what the Ninth Circuit, sorry, the D.C. Circuit did in Sullivan, which is to say that you would review it under a 12B6 standard or possibly a judgment on the pleading standard because we had already answered the complaint, and you can make this decision looking at the four corners of the complaint where plaintiff says, I'm challenging the background, I'm alleging that you are delaying the background investigation, and you can make the ruling that 12B6, failure to state a claim. So even if it's not jurisdictional, the outcome is no different. What's the best argument for a jurisdictional ruling as opposed to a non-jurisdictional affirmance? The best argument is that Egan and all the appellate courts that have relied upon Egan have concluded that it is a jurisdictional argument. It's a jurisdictional issue, and that's the best argument. Well, Egan doesn't discuss it in terms of subject matter jurisdiction. They do not say explicitly jurisdiction, but they do discuss the power to hear a court this issue and that the MSPB had no power to review the backgrounding clearance decision. Is any of that inconsistent with justiciability, a ruling on justiciability grounds? No, not necessarily. So you view justiciability as a concept, a jurisdictional concept? In this case, yes. Well, I'm talking generally. Yes, I believe so. And that is because why? All cases that have interpreted Egan have said this is a jurisdictional issue. I'm asking for a reason, not a citation to authority. I sound like Judge Posner. I didn't say that. If you could just explain why you're saying what you're saying as opposed to just saying that's what every court has held. The reason would be that... We're not interpreting a statute here that says no court shall have the power to review. Your Honor, I'm not entirely clear. The answer to that question. Okay. It makes a difference to the mandate line. Yes, Your Honor. I would just say that all courts that have interpreted Egan have found that it is a jurisdictional issue. Ms. Blunder, you were about to contrast this case with the first example I gave. You were going to say, you know, that's an extreme example, but here you think it would require us to go into the record as far as the background, the security clearance, and kind of how it's being done. And why do you believe that? So let me back up. Mr. Sheba believes that he was wrongly referred to the OIG in 2011 for misconduct. He is challenging that referral in another lawsuit that is pending before a different district court that's not before the panel right now. He is making an allegation of a hostile work environment, retaliation, disability discrimination, relating to that referral. And if he prevails on that claim, he will be entitled to relief, that he's entitled to possibly front and back pay because of what happened as a result of that referral. So in this case, so you're hypothetical. The person had no relief. There was no venue to challenge that. But Mr. Sheba is challenging this referral, just in another case. There's no Egan-based argument being raised in that case? No, Your Honor, because the other case did not involve a secret security clearance determination. So the Egan bar only involves investigation background checks. And in the other case, he's not challenging any loss of his security clearance. I thought the security investigation occurred in the context of the other referral. And then it was renewed in the context of the present job offer. So plaintiff is alleging that they believe that that referral is what is causing the delay in this case, in this investigation. That's what they claim. They're saying Mr. Sheba applied for a job in 2019. He didn't, and after one year, he did not receive his security clearance, so his job was rescinded. And they think it is because of that referral. They want discovery on that. They want to hear everything that the PSD considered. That's what they believe. We don't know that, sitting here today. But he is challenging the 2011 referral in the other case. And he received discovery on that. He got documents, took deposition testimony regarding the person who made that referral. But he didn't have a security clearance revocation relating to that first case. I thought that's why he lost the job, the earlier job. No, that is not why. But there was a security investigation when he was out on disability leave with the prior job on the basis of his superior officer's referral that he is alleging was false. Yes. And there was a security finding, just not the one that he was referred for, an adverse security finding. Yes. So, Your Honor, he worked for USCIS from 2007 to 2014. He was on disability leave during those seven years for about six and a half of those years. He was referred to OIG for this misconduct while he was out on leave. They did the investigation, and they concluded he had engaged in wrongdoing. He was not immediately terminated after that investigation. After he was eventually terminated in 2014, he applied for another job at ICE, and he went through the background clearance process. But for that job, it did not require a secret security clearance. It was a suitability determination, which EGAN does not apply to, and a party can appeal. So he applied for this ICE job. He went through the suitability determination. They rescinded that job, and he amended his complaint in the first lawsuit to allege that he had lost another job offer as a result of this referral. But because, again, it was a suitability determination and that's appealable, we did not make the EGAN argument. So it's the loss of the second job offer that's being challenged in the prior lawsuit, not his initial firing. He's challenging both. He's challenging both in the first lawsuit. But the initial firing, the agency didn't fire him because of the security investigation findings? I thought the agency did. No. They terminated him because he basically didn't work for six and a half out of the seven years, and they said that he was no longer used to the agency. But there were other security concerns that were raised apart from those that were raised in the referral? The referral was to OIG for an investigation of fraud, waste, and abuse. It wasn't relating to his security clearance. So that referral, it wasn't with the intent to strip him of any security clearance. It was because they thought he had violated Department of Homeland Security's policies and procedures. Okay, so what's the connection between the original referral from his supervisor, whose name I can't remember, way back when, when he was on disability leave for those seven long years, and the present security clearance investigation? Is there any connection between those two things? I think Plaintiff is alleging that that referral is what is causing him to not be able to get his secret security clearance in 2020, a decade later. He believes that that OIG finding, that investigation, that's the poison, and these are the fruits of the poisonous tree, that he's not being able to get future employment because of that referral, which he is challenging in a district court pending right now. Okay. Thank you for that clarification. To the extent it helped. I just want to make one more point. To the extent that Mr. Sheba mentions that the allegations were false and fabricated, the OIG concluded he did engage in misconduct. They concluded that he misused his position to attempt to garner favor or information on behalf of Iraqi refugees before the UNHCR. So unlike Rattigan, he did engage in wrongdoing, and that was a conclusive finding. And so these allegations are not false and fabricated. That investigation concluded wrongdoing. Thank you. And we ask that you affirm the district court's ruling. Thank you. All right. Ms. Abraham. I just have a few points for rebuttal. This case was installed by the Personnel Security Division. The conduct complained of is conduct committed by defendant DHS OIG, the same body that investigated plaintiff back in 2011. The court should consider this when applying Egan. The court should also consider the slippery slope of the government's argument that anybody, any non-expert who makes any kind of security referral to a person, would be impugned and not be subject to a retaliation or discrimination complaint. When Egan considered the scope of its review, it was specifically to security clearance determinations. The issues today are not just limited to what happened in 2011, but also now, because what the government has told us is that an agency, and we allege that this is DHS, is reinvestigating plaintiff. It offers us no other information than that. And for that reason, PSD was not able to complete the security clearance determination. The other case also involves a job offer that was rescinded, that was offered to him by the Immigration and Customs Enforcement. The underlying OIG referral was based on the allegation that Mr. Sheba was taking money, taking payment, in exchange to help Iraqi refugees before the UNHCR. When Dorochev made that referral, when she made that claim to OIG, she never received any information from the State Department that he was taking payment for his help. In fact, the State Department noted that Mr. Sheba specifically told UNHCR, I am employed at DHS, but I am contacting you in my personal capacity. And it merely advised at the time that Mr. Sheba get a refresher on the ethical guidelines. Ms. Dorochev is the one that escalated to OIG and made a false claim that he was getting payment. And that claim was never, ever substantiated. Nor were any of the grounds that OIG found used to terminate him. He was terminated on the basis of being a rehired annuitant. There were no grounds given to him when he was terminated in 2014. I know I have lost my time, and so I would ask that this court reverse the district court's dismissal. Thank you very much. Thank you. Our thanks to all counsel. The case is taken under advisement.